ANNA M. KUHN, Plaintiff in Error, *vs.* EMMA SOHNS *et al.* Defendants in Error.

*Opinion filed December 23, 1926.*

1. SPECIFIC PERFORMANCE—*contract may be enforced against a subsequent purchaser with notice.* Where a contract for the purchase of real estate is recorded a subsequent purchaser of the vendor is charged with constructive notice of the rights of the vendee, and where he accepts and pays for his deed he steps into the shoes of the vendor and becomes trustee for the vendee, and the vendee may enforce performance by the purchaser to the same extent as performance might have been compelled against the vendor.

2. SAME—*failure to furnish abstract as agreed puts vendor in default.* Where a contract for conveyance of real estate requires the vendor to furnish an abstract of title, failure or neglect to furnish the abstract puts the vendor in default, and the vendee is required to do nothing but be ready, able and willing to perform upon performance by the vendor.

3. SAME—*what is sufficient description of personal property included in contract for sale of real estate.* A contract for the sale of real estate, including "all articles and goods remaining in the

building and barn located on said premises, * * * with the exception of one pink blanket and feathers and the personal wearing apparel," sufficiently describes the personal property to be sold; and it is not necessary that all the articles should be mentioned by name and number, as extrinsic evidence is competent as to the parties and subject matter if necessary for their identification.

4. SAME—*equity will enforce contract for conveyance, including personal property.* An agreement to convey real estate and to transfer personal property will be specifically enforced in equity both as to the realty and the personalty.

5. SAME—*when complainant is not guilty of laches.* A vendee in a recorded contract for the conveyance of real estate is not guilty of *laches* where she is at all times ready, able and willing to perform and files her bill against the vendor and a subsequent purchaser within six months of the making of the contract and less than four months after the conveyance to such purchaser.

6. SAME—*when vendee's right to performance is not affected by failure to waive claim to personal property before amendment of bill.* Equity will not deny specific performance of a part of a contract which is capable of being performed because the contract as a whole is incapable of performance; and the right of a vendee to specific performance of a contract for the sale of real estate, including personal property, is not affected by the fact that she did not waive claim to the personal property before she amended her bill so as to ask for performance only as to the real estate.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

GILBERT F. WAGNER, and LESLIE A. GILMORE, for plaintiff in error.

CLITHERO, OSBORN & STEVENS, for defendant in error Charles E. Vogelsang.

Mr. JUSTICE DUNN delivered the opinion of the court:

Anna M. Kuhn by this writ of error seeks to reverse a decree of the superior court of Cook county which dismissed for want of equity her bill filed on January 26, 1920, for the specific performance of the following contract

324—4

executed on July 24, 1919, by the complainant and Emma Sohns and recorded on August 6, 1919:

"Received of Anna M. Kuhn fifty (50) dollars, as part payment towards the purchase of the following described real estate, [here follows the description of the property situated in McHenry county, Illinois,] which is hereby bargained and sold to the said Anna M. Kuhn for the sum of twenty-eight hundred and seventy-five dollars, twenty-eight hundred and twenty-five ($2825) dollars more to be paid on the delivery of a good and sufficient warranty deed of conveyance for the same within ten days from this date, or as much sooner thereafter as the deed is ready for delivery, after the title has been examined and found good.

"A merchantable abstract of title brought down to date to be furnished.

"It is hereby covenanted and agreed between the parties to this contract that all articles and goods remaining in the building and barn located on said premises shall remain therein for the use of said Anna M. Kuhn with the exception of one pink blanket and feathers and the personal wearing apparel, which is to be delivered to Emma Sohns.

"Fire insurance amount to be prorated.

"Should the title to the property not prove good then this $50 to be refunded. But should the said Anna M. Kuhn fail to perform this contract on her part promptly at the time and in the manner above specified, (time being of the essence of this contract,) then the above fifty dollars shall be forfeited by her as liquidated damages and the above contract shall be and become null and void."

Besides Emma Sohns, Charles E. Vogelsang (with whom Emma Sohns had entered into a contract on August 25, 1919, to sell the same real estate and personal property for $3200 and to whom she had conveyed the real estate on October 7, 1919,) was made a defendant. The defendants filed separate answers, and the cause was referred to a master, who reported the evidence with a recommendation adverse to the complainant. By leave of the court the complainant amended her bill so as to waive all claim to the personal property mentioned in the contract and offer full payment and performance on her part upon a proper conveyance to her of the title to the real estate described in

the agreement. The defendants again filed separate answers, the cause was referred to a master as to the issues made by the amended pleadings and additional evidence which might be taken, and the master made a supplemental report, which was also adverse to the complainant. Exceptions to the report were overruled and the decree was entered which is now before us for review.

Mrs. Sohns has filed no brief. Vogelsang argues that the contract was indefinite, uncertain and incapable of enforcement; that the plaintiff in error was guilty of such *laches* as to bar her right to a specific performance; that Mrs. Sohns tried to have the plaintiff in error carry out her contract, but the plaintiff in error was not ready, able and willing to do so and made no effort in good faith to do so until after the sale of the property to Vogelsang. .

The contract imposed upon Mrs. Sohns the obligation to furnish an abstract of title brought down to date. She did not do so. She testified that she offered the abstract to Pfeiffer, who drew the contract, at the time the contract was signed, and again later asked him to give her a receipt for it, but he refused to give her the receipt. She did not execute or tender a deed to the plaintiff in error. Pfeiffer testified that Mrs. Sohns did not offer the abstract to him at any time nor did he refuse to give her a receipt for it. It does not appear that Pfeiffer had any authority from the plaintiff in error to receive the abstract. Mrs. Sohns also testified that she offered the abstract to the husband of the plaintiff in error several times but he did not take it; that she wanted to close the deal and went out to where he was employed, and he said he did not have the money and his wife had about $125. Kuhn testified that she never offered him an abstract or asked him for money or came to his place of business and said that she wanted to close the deal, and that he never told her that he did not have the money or that his wife had about $125. He testified further that at the request of his wife he tried to find

Mrs. Sohns at her home; that he called her by telephone and called her house about every other night about fifteen times, and finally found her there on a Sunday and asked her why she did not fix the abstract to get things straightened out; that she said she would do so the next day or the day after. This was about three weeks after the contract was executed. Kuhn told her that the money was ready for her whenever she would deliver the abstract. Mrs. Sohns called at his place of business the next week in August and said that she wanted to be released, and Kuhn told her that he could not release her. A day or two later she said she was threatened with consumption and the doctor had advised her to live out in the country and she could not sell the property; that she had to have it for herself. She came a day or so later and said she was married secretly and could not give a clear title, and Kuhn told her that he would take it the way it was,—he would take a chance on it. The plaintiff in error testified that she made many efforts after the contract was signed to reach Mrs. Sohns by telephone. She finally succeeded, and Mrs. Sohns said that she had sold the property for $3000. The plaintiff in error said she did not see how Mrs. Sohns could do that because the contract was recorded, and the next day Mrs. Sohns telephoned to her and inquired whether she wanted the property, and the plaintiff in error responded that she did. The plaintiff in error testified that she had the money in the bank all the time, ready and willing to pay Mrs. Sohns upon receiving a deed conveying the property described to her. The evidence shows that the plaintiff in error was ready, able and willing to perform her contract upon performance by Mrs. Sohns, but that the latter wished to avoid the performance of her contract, having agreed to sell the property to another purchaser at a higher price.

The contract between the plaintiff in error and Mrs. Sohns having been recorded, Vogelsang is charged with notice of it when he subsequently made his contract with

Mrs. Sohns, and he had actual notice when the conveyance was made to him and the remainder of the consideration paid. At that time he knew of the contract, but Mrs. Sohns told him that Mrs. Kuhn said she did not want the property,—she did not have the money,—and Vogelsang, acting on the strength of this statement, accepted the deed and paid the $3100 remaining due on the contract. Since he had knowledge of the plaintiff in error's contract she may compel its specific performance by him in the same way as she might have compelled specific performance by her vendor if she still retained the title. (*Forthman* v. *Deters,* 206 Ill. 159; *Threlkeld* v. *Norris,* 300 id. 223.) Mrs. Sohns was in default on the contract in not furnishing the abstract. Until that was done nothing was required of the plaintiff in error, who was at all times ready, able and willing to perform upon performance by the vendor.

The claim of the defendant in error Vogelsang that the contract was indefinite, uncertain and incapable of enforcement arises out of the description of the personal property affected by the contract, which is contained in the following language: "all articles and goods remaining in the building and barn located on said premises shall remain therein for the use of said Anna M. Kuhn with the exception of one pink blanket and feathers and the personal wearing apparel, which is to be delivered to Emma Sohns." This was a definite description and included all articles and goods, with the specific exceptions named, situated in the building and barn on the premises at the time the contract was entered into. It was not necessary that all the articles should be mentioned by name and number, since extrinsic evidence is always competent as to the parties and subject matter of a contract if necessary for their identification. (*Cumberledge* v. *Brooks,* 235 Ill. 249.) An agreement to convey real estate and to transfer personal property will be specifically enforced in equity both as to the realty and the personalty. *Dunham* v. *Slaughter,* 268 Ill. 625.

It is argued that there had been no waiver by the complainant of her claim to the personal property before the conveyance by Mrs. Sohns to Vogelsang. Vogelsang acquired no greater rights by that conveyance than those of his grantor, Mrs. Sohns. He was a volunteer, who purchased the property which had already been sold to the plaintiff in error, not only with constructive notice by the recording of the contract, but with actual notice before accepting the deed and paying the consideration, that his grantor had no interest in the property other than the right to receive the purchase money from the plaintiff in error. He merely stepped into the shoes of his grantor and became a trustee for her vendee.

There was no *laches* on the part of the plaintiff in error in filing her bill, for she was in no default in her contract, and her bill was filed within less than four months of the conveyance to Vogelsang and within six months of the making of the contract. *Litsey* v. *Whittemore,* 111 Ill. 267.

The right of the plaintiff in error to a decree for the conveyance of the real estate is not affected by the fact that before the amended bill was filed she had made no waiver of her claim to the personal property. Courts of equity will not deny specific performance of a part of a contract which is capable of being performed because the contract as a whole is incapable of performance. (*Moore* v. *Gariglietli,* 228 Ill. 143; *Work* v. *Welsh,* 160 id. 468; *Shirley* v. *Spencer,* 4 Gilm. 583.) These were suits where only real estate was involved and the vendor did not hold the title to all the real estate sold, but the principle is equally applicable to a case where a part of the subject matter of the sale is personal property and the inability to compel conveyance of title applies to the personal property only. In each of those cases the suit was brought for specific performance of a contract in all its details, and no amendment waiving the right was necessary to enable the court to grant relief to the extent to which it was possible.

The decree will be reversed and the cause remanded to the superior court, with directions to enter a decree in favor of the complainant for the conveyance of the real estate in accordance with the principles announced in this opinion.

*Reversed and remanded, with directions.*