(No. 33039.— )

JOHN ENNIS, Appellee, *vs.* ERNEST JOHNSON, Appellant.

*Opinion filed May 24, 1954—Rehearing denied September 20, 1954.*

JAMES PERCIVAL PIO, and MARK J. SATTER, both of Chicago, for appellant.

JOHN H. GALGANO, and PATRICK A. BARTON, both of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal by defendant, Ernest Johnson, from a decree of the circuit court of Cook County ordering him to convey his undivided half interest in certain improved real property, held in joint tenancy with his wife, to plaintiff, John Ennis, pursuant to an alleged contract for the sale of the entire premises.

The cause presents for our determination the issue of whether the purchaser is entitled to specific performance to the extent of the vendor's undivided half interest in certain improved real property held in joint tenancy, where the alleged contract is for the sale of the entire property, but signed only by one joint tenant.

Inasmuch as no testimony was offered, the facts evolve from the pleadings, exhibits, and stipulations signed by the parties. It appears that defendant and his wife, Olga

Johnson, held in joint tenancy certain vacant land at 3046 Birchwood Avenue, Chicago, on which a six-room house was thereafter constructed. On November 29, 1949, defendant, Ernest Johnson, leased these improved premises to plaintiff at a rental of $165 per month, commencing December 15, 1949, and expiring December 14, 1951. This lease included a rider granting plaintiff a six-months' option to purchase the premises; however, that option expired by its own terms. Another instrument was executed at the same time that the lease was signed relating to the furnishing of stair carpeting, window shades, screens and storm windows, a stove and a refrigerator.

After plaintiff entered possession, the owners of the fee made certain improvements at a cost of $1983. On February 15, 1951, a second rider was executed by the parties, identical in all respects to the original rider, except that it extended the lessee's option to purchase the premises until June 15, 1951. Under this rider the lessee was required to make a $990 security deposit to assure the performance of the conditions of the lease, and, upon compliance therewith, the sum could be applied toward the last six-months' rental.

Under the terms of the option provisions, the lessor was obliged to convey title to the demised premises by warranty deed, and the lessee was given the right to purchase the premises at the price of $21,000, payable partly in cash and partly by assuming the existing mortgage, estimated at about $13,500, which was being reduced by monthly payments of varying amounts. At the time of exercising this option, the lessee was required to pay the lessor $1000 to be applied upon the purchase price, and upon the transfer of title the lessee would receive a credit of the $990 security deposit.

Pursuant to the original lease and rider, plaintiff paid the $990 security deposit, or the equivalent thereof, and on June 14, 1951, one day before the alleged option in the

second rider expired, plaintiff delivered to defendant a notice of election to purchase the premises on the terms and conditions of the "rider" of February 15, 1951, and paid the sum of $1000, to be applied on the purchase price.

Receipt of this election to exercise the option was acknowledged in a letter by the attorney for Ernest Johnson, wherein it was stated that certain complications existed which required delay. When plaintiff was subsequently informed that defendant, Ernest Johnson, was unable to convey the entire premises because Olga Johnson, the joint tenant, refused to participate in the transaction, plaintiff filed a complaint against defendant and his wife seeking specific performance of the option agreement.

On a motion to dismiss the complaint filed by defendants Ernest Johnson and his wife, Olga Johnson, the trial court allowed the same, entered judgment for Olga Johnson against plaintiff in bar of action and for costs and permitted plaintiff to file a complaint at law giving Ernest Johnson 20 days in which to answer. The plaintiffs amended their complaint, prayed for money damages, and, further, that defendant Ernest Johnson be required to convey to plaintiff his undivided interest in the property in question. The defendants made a motion to strike this complaint and significantly failed to challenge plaintiff's right to equitable relief. This motion was overruled and, in the order doing so, it was provided that the plaintiff could insert an amendment on its face, "or, in the alternative," just before the prayer, asking for equitable relief. Defendants then filed their answer, asserting that plaintiff is not entitled to the relief sought. An affidavit in support of a motion for summary judgment was filed by Ennis setting forth the undisputed facts which we have heretofore related. Then defendants filed a counterclaim asking damages sustained as a result of plaintiff withholding possession of the premises. For the purpose of disposition of the equitable issues above, the plaintiff and defendants entered into a stipulation of

facts. The decree entered herein was in pursuance to plaintiff's motion for summary judgment. It also appears that the trial court, apparently realizing that his order of April 29, 1952, mistakenly permitted plaintiff to file an amended complaint asking for damages only, thereupon, entered without objection a *nunc pro tunc* order amending the order of April 29, 1952, permitting a prayer for equitable relief. We do not concur in defendants' claim that this *nunc pro tunc* order, coming more than thirty days after the order sought to be amended, was void. It is reasonable to say that the trial court intended by his order to permit plaintiff to file an amended complaint asking for whatever relief was available. He simply made the ruling that Olga Johnson, not being a party to the contract sought to be enforced, was not liable. It is clear that defendant Ernest Johnson placed a similar construction upon that order, for in all subsequent proceedings he never challenged plaintiff's right to claim equitable relief.

Defendant urges that the circuit court erred in decreeing specific performance, inasmuch as a contract may be specifically enforced according to its terms or not at all, and that the remedy will not be granted as to a one-half interest in property held in joint tenancy where the contract was for the entire premises, and would have to be substantially reformed by the court to give effect to the various equities between the parties.

Plaintiff, however, argues that specific performance of a contract to convey real estate may be granted as to whatever title the vendor may have in the property, with a proportionate abatement of the purchase price; and also that the court did have jurisdiction to issue the *nunc pro tunc* order altering the prior order of April 29, 1952.

We find no authority that supports defendant in his position that he cannot be compelled to convey his interest in the property to the vendee. There is no doubt that plaintiff contemplated the purchase of the entire property held

in joint tenancy by Ernest and Olga Johnson. For aught that appears, Ernest Johnson, at the time he executed the contract, thought that his wife would join him in the conveyance. The fact that Ernest Johnson failed to perform in accordance with the terms of his written agreement should not provide him with an excuse for not doing that which was within his power to do.

In the case of *Moore v. Gariglietti*, 228 Ill. 143, there was a contract by Marian Moore to sell twenty acres of land when at the time she was the owner of only a two-fifths interest. The owners of the remaining interest did not join in the contract to sell. It was there contended that if the contract was one for a conveyance of the whole tract, it was erroneous for the court to decree the conveyance of the title to an undivided part of the premises. The court, rejecting this contention, said "An agreement by one tenant in common to convey the whole of the joint property cannot be enforced against his co-tenants, but may be enforced as to his interest in the premises."

But appellant argues that since the present title was held in joint tenancy there is a different rule, and relies upon *Spadoni v. Frigo,* 307 Ill. 32. A careful reading of that case clearly shows that the court predicated its refusal to decree specific performance upon the finding that the contract of sale of the whole property was conditioned upon the consent of the wife, who never consented.

A joint tenancy, even though the joint tenants are husband and wife, is severed when one joint tenant conveys his or her interest to a stranger. (*Mette v. Feltgen,* 148 Ill. 357; *Lawler v. Byrne,* 252 Ill. 194; *Schuck v. Schuck,* 413 Ill. 390.) We fail to find any merit in appellant's contention that the contract under consideration was so vague, incomplete and ambiguous that it was incapable of being enforced. The purchase price was $21,000. There was a mortgage indebtedness, tax items, and rental adjustments. The process of prorating and making computations was a

matter of simple arithmetic. There was nothing indefinite about the contract that left to the chancellor a remaking of the agreement based on guess and conjecture. Specific performance of a contract to convey real estate may be granted as to whatever title the vendor may have in the property, with a proportionate abatement of the purchase price commensurate with the interest of the vendor in the whole.

In the light of the foregoing analysis, the decree entered herein should be and is affirmed.

*Decree affirmed.*